## UNITED STATES BANKRUPTCY COURT
## WESTERN DISTRICT OF PENNSYLVANIA

IN RE:

| | | |
|---|---|---|
| **DAVID A. PUCCI,** | : | **Bankruptcy No. 07-28190 BM** |
| | : | |
| | : | |
| **Debtor** | : | **Chapter 7** |
| **DAVID A. PUCCI,** | : | |
| | : | |
| **Plaintiff** | : | |
| | : | |
| **v.** | : | **Adversary No. 08-2219 BM** |
| | : | |
| **LIBERTY MUTUAL GROUP, INC.,** | : | |
| **LIBERTY LIFE ASSURANCE COMPANY** | : | **Doc. # 20: Defendants' Motion** |
| **OF BOSTON, and DAWN ZAHN,** | : | **For Summary Judgment** |
| **individually and as Recovery** | : | |
| **Specialist of the Disability Claims** | : | **Doc. # 24: Plaintiff's Motion For** |
| **Department of Liberty Mutual,** | : | **Summary Judgment** |
| | : | |
| **Defendants** | : | |

Appearances:    Edgardo D. Santillan, Esq. for Plaintiff/Debtor
                James P. Hollihan, Esq. for Defendants


## <u>MEMORANDUM OPINION</u>


Defendants in this adversary action have brought a motion for summary judgment with respect to all five counts of the complaint. Debtor has responded with a cross-motion for summary judgment with respect to all the counts.

Defendants' motion will be granted and debtor's will be denied for reasons set forth below.

## FACTS

The following facts are not in dispute.

Debtor went on disability leave from his employment by Columbia Gas of Pennsylvania, Inc., on August 30, 1999.  Columbia Gas is a subsidiary of Columbia Energy Group Services, Inc.

Defendant Liberty Life Assurance Company of Boston is related to defendant Liberty Mutual Group, Inc..  Defendant Dawn Zahn was employed at all relevant times in the disability claims department of Liberty Mutual Group.

Liberty Mutual Group entered in to a group disability insurance policy with Columbia Energy Group Services prior to January 1, 2000.  The policy covered all employees of Columbia Gas, among others, and went into effect on January 1, 2000.

An employee who qualified for long-term disability benefits under the group policy would receive 60% of his or her monthly gross income up to $10,000 per month.  Debtor's gross income when he went on disability leave was $3,583.49 per month.   Under this formula, debtor was to receive a payment in the amount of $2,150.09 per month if he qualified for long-term disability benefits.

A participant's gross monthly disability benefit was subject to reduction if the participant was receiving "other income".  Included among "other income" was any disability benefit received under the Social Security Act.  The long-term disability benefit received under the above disability insurance policy when combined with "other income"

- 2 -

received could not exceed 70% of the participant's monthly gross income prior to the onset of disability.

Liberty Life was entitled under the disability insurance policy to recover on a dollar-for-dollar basis any overpayment of benefits on account of the participant's receipt of "other income". Among other things, Liberty Life was permitted to reduce any future disability payments due under the disability insurance policy. Repayment in full of the overpayment was "required".

Debtor applied to Liberty Life in January of 2000 for long-term disability benefits. His application for benefits was approved on January 25, 2000. Monthly payments to debtor were to begin on February 28, 2000. The letter notifying debtor that his application had been approved instructed debtor to notify Liberty Life in the event he was receiving or was entitled to receive "other income" such as social security benefits.

Beginning on February 28, 2000, debtor began receiving long-term disability benefits under the above disability insurance policy in the amount of $2,150.09, per month, which equaled 60% of his monthly gross income when he became disabled. Liberty Life did not know at that time whether debtor also was receiving supplemental social security income (hereafter "SSI").

On May 11, 2001, approximately fifteen months after debtor began receiving monthly long-term disability payments, Liberty Life informed debtor in a letter that it "understood" he had applied for SSI. Among other things, Liberty Life asked debtor to submit proof that he had applied for such benefits. It also reminded debtor that his long-

- 3 -

term disability benefits would be reduced under the above disability insurance policy if he received SSI benefits.

Enclosed with the letter was a form which gave debtor two options. Debtor could authorize Liberty Life to estimate the amount of SSI benefits he would receive per month and to reduce his monthly long-term disability benefits accordingly. Alternatively, debtor could elect to continue receiving his long-term disability benefits without any reduction for the estimated monthly SSI benefit he would receive. Under this option debtor would reimburse Liberty Life for any overpayment of his long-term disability benefit. Debtor elected the first option and returned the form to Liberty Life.

Liberty Life re-calculated debtor's monthly long-term disability benefit upon receipt of the form from debtor; it increased the benefit he was entitled to receive from 60% of pre-disability earnings to 70% – i.e., from $2,1590.09 to $2,508.44 – and estimated that debtor would receive $1,003 in monthly SSI benefits. Based on this estimate, Liberty Life reduced debtor's monthly benefit under the long-term disability insurance policy to $1,505.44.

In January of 2005, Liberty Life estimated that debtor was receiving $1,253 rather than $1,003 per month. Based on this estimate, debtor's long-term disability benefit was reduced from $1,505.44 to $1,255.44 per month.

On numerous occasions from 2001 to 2005, more than four years after debtor began receiving long-term disability benefits under the disability insurance policy, Liberty

- 4 -

Mutual requested that debtor provide it with information concerning the amount of SSI benefits he was receiving every month. Debtor did not provide the requested information.

Debtor commenced a civil action in February of 2006 in the United States District Court for the Western District of Pennsylvania against Liberty Life and Columbia Energy Group. He asserted in Count I of the complaint that Liberty Life had violated ERISA by reducing his monthly long-term disability benefit, as described previously. Debtor asserted in Count II that Columbia Energy Group had breached a collective bargaining agreement with the union representing debtor by agreeing in the above long-term disability insurance policy that Liberty Life could reduce an employee's monthly long-term disability benefit by the amount of SSI benefits he or she received. Such a reduction, debtor claimed, was contrary to the collective bargaining agreement.

Debtor's claim against Columbia Energy Group was dismissed by the District Court in July of 2006 pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief could be granted. Shortly thereafter debtor voluntarily dismissed his claim against Liberty Life and the case was closed.

During discovery in the District Court action, Liberty Life received a copy of a document dated April 21, 2001, awarding SSI benefits to debtor. Debtor was to receive a lump-sum payment in the amount of $15,400 for SSI payments due from February of 2000 through March of 2001 and also was to receive $1,420 in SSI benefits for each month thereafter.

- 5 -

After receiving the document in discovery, Liberty Life again re-calculated the amount of long-term disability benefits to which debtor was entitled and concluded that debtor had been overpaid by a total of $35,678. Liberty Life then notified debtor that it would withhold his monthly long-term disability payments and would apply them to the overpayment. Liberty Life estimated that it would take approximately thirty-three months to recover the full amount of the overpayment.

Starting in December of 2006 and continuing to the present time, Liberty Life applied debtor's monthly long-term disability payment to the amount of the overpayment. Debtor has not received a long-term disability benefit payment since December of 2006.

Debtor filed a voluntary chapter 7 petition a year later on December 31, 2007. A chapter 7 trustee thereafter was appointed.

Included among the assets listed on the bankruptcy schedules was debtor's interest in what he characterized as a "setoff" (by Liberty Life) in the amount of $4,116 which had occurred during the 90-day period preceding the petition date. Debtor claimed an exemption in the entire amount of the "setoff" in accordance with § 522(d)(5) of the Bankruptcy Code. No objection was made to the claimed exemption.

Liberty Life was identified elsewhere on the bankruptcy schedules as having a general unsecured claim in the amount of $22,041.52 for "Disability Overpayment Benefits".

- 6 -

The chapter 7 trustee reported after concluding the § 341 meeting of creditors that no assets of debtor's bankruptcy estate would be available for distribution to his pre-petition creditors.

Debtor's bankruptcy counsel wrote two letters to Liberty Life in March of 2008. Counsel asserted, among other things, that Liberty Life had violated the automatic stay when it withheld debtor's monthly long-term disability payments and applied them to the overpayment he had received.  He threatened to bring an adversary action to have Liberty Life held in contempt for violating the automatic stay.

Liberty Life asserted in response to the letters that its action constituted a recoupment rather than a setoff and, therefore, did not violate the automatic stay.  It further stated its intention to continue applying debtor's monthly long-term disability payments until the overpayment was paid in full.

Debtor received a discharge on April 15, 2008.  A final decree issued and the bankruptcy case was closed that same day.

On the same day he received a discharge, debtor brought a motion to reopen his bankruptcy case to bring an adversary action "to enforce the automatic stay, to seek turnover of unlawfully withheld disability payments and for sanctions".  The motion was granted and the case was reopened.

Debtor thereafter commenced this adversary action by filing a five-count complaint.

Count I is against Liberty Mutual Group.  Count II is against Liberty Life.  Count III is against Dawn Zahn.  The allegations made in these complaints are identical.

- 7 -

According to debtor, defendants were directed (by him) to rescind its unilateral offset of disability benefits to which he was entitled under a collective bargaining agreement with Columbia Energy Group (¶¶ 32, 37 and 42).  Defendants did not halt its collection efforts and refused to turn over his withheld disability benefits (¶¶ 34, 39 and 44).  According to debtor, defendants wilfully and wilfully violated the automatic stay by continuing their collection activities after receiving notice of debtor's bankruptcy filing (¶¶ 35, 40 and 45).  Debtor further asserts in these counts that the claim of Liberty Mutual) is "no longer a legally enforceable debt in light of his discharge (¶¶ 33, 38 and 43).

Count IV is against Liberty Mutual Group and Liberty Life.  Debtor asserts that defendants unilaterally offset his long-term disability payments while his bankruptcy case was ongoing without first obtaining relief from the automatic stay.  According to debtor, defendants had offset a total of $17,599.08 as of the date on which the complaint was filed.  He claims that the offset constituted a wilful and intentional violation of the automatic stay pursuant to § 362(k)(1) of the Bankruptcy Code and seeks to recover damages.

Count V also is against Liberty Mutual Group and Liberty Life.  According to debtor, defendants offset a total of $4,116 during the 90-day period prior to the petition date.  He asserts that the offsets occurring during this period constituted preferences for purposes of § 547(b) of the Bankruptcy Code and consequently may be avoided and recovered.

Debtor and defendants have filed cross-motions for summary judgment with respect to all counts of the complaint. Oral argument on the respective motions was heard and the parties have submitted post-hearing briefs. The motions are now ready for decision.

## DISCUSSION

### SUMMARY JUDGMENT STANDARD

The standard summary for granting summary judgment is well-known and need not be recited at length.

Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to a judgment in its favor as a matter of law. *Federal Rule of Civil Procedure 56(c).* This standard "mirrors" the standard for a directed verdict under Federal Rule of Civil Procedure 50(a), which requires the trial judge direct a verdict if, under the governing law, there can be but one reasonable conclusion as to the verdict. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248, 106 S.Ct. at 2510. 477 U.S. 250, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

A dispute concerning a fact is "genuine" if the evidence of record could lead a reasonable jury to return a verdict in favor of the non-moving party. *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510. A fact is "material" if it "bears on an essential element of the plaintiff's claim". *Fakete v. Aetna, Inc.*, 308 F.3d 335, 337 (3d Cir 2002). Applicable substantive law determines whether a specific fact is material in this context. The substantive law determines which facts are critical and which are irrelevant to the asserted cause of action. *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510.

- 9 -

A party requesting a summary judgment bears the initial responsibility of informing the trial court of the basis for its motion and must identify those portions of the record which demonstrate the absence of a genuine issue of fact. *Celotex v Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986)

If the non-moving party will have the burden of proof at trial on a dispositive issue, it must go beyond the pleadings, affidavits, depositions, interrogatories and admissions on file, if there are any, and identify specific facts which establish that there is a genuine issue for trial. If the non-moving party fails to so respond, summary judgment, if appropriate, must be entered against that party. Federal Rule of Civil Procedure 56(e).

When the moving party satisfies its burden of proving a prima facie case for summary judgment, the opposing party "must do more than simply show that there is some metaphysical doubt as to material facts". *Matsushita Electric Industries Co. v. Zenith Radio*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L Ed.2d 538 (1986). For a non-moving party to prevail, there must be sufficient evidence for a jury to return a verdict in its favor; if the evidence is merely "colorable" or not "significantly probative", summary judgment should be granted. *Armbruster v. Unisys Corp.*, 32 F.3d 768, 777 (3d Cir 1994).

The non-moving party is entitled to the benefit of all reasonable inference. The record must be construed in a light most favorable to that party and all doubts must be resolved in its favor. *Anderson v. Consolidated Rail Corp.*, 297 F.3d 242, 247 (3d Cir 2002).

- 10 -

The facts previously recited in this memorandum opinion were set forth in an affidavit by the litigation manager of Liberty Life and was accompanied by supporting documents. Debtor does not genuinely dispute any of the facts stated therein but does challenge their materiality to defendants' summary judgment motion.  What must be determined in this instance is whether either side is entitled in light of these undisputed facts to a judgment in its favor "as a matter of law".

## THE COMPLAINT

The complaint contains superfluous language and includes what appears to be extraneous matters.  Determining the specific causes of action debtor has asserted in the various counts of the complaint will provide a framework for our discussion of the competing cross-motions for summary judgment.

The best source of such information comes from debtor himself, who characterized the causes of action stated in the complaint in his brief in support of summary judgment. According to debtor, the complaint:

> ... was based upon [defendants'] violation of the automatic stay, and recovery of the preferential payments/offset received by Defendants within the 90 day [sic] period prior to the bankruptcy filing. Furthermore, the dischargeability issue of Defendants' claim was adjudicated as a matter of law by their failure to Object to the Discharge of same within Debtor's bankruptcy filing.

Using this to guide our discussion of the dueling motions for summary judgment, it appears that debtor has asserted in the complaint that:

> (1) defendants violated the automatic stay by continuing to withhold the monthly disability payments debtor was to receive during the bankruptcy

case and applying them to overpayments he had received prior to the
petition date;
(2) Liberty Life violated the discharge injunction by continuing after he had
received a discharge to withhold his monthly disability benefits and applying
them to the overpayment;

(3) the monthly long-term disability payments defendants withheld during
the 90-day period prior to the petition date and applied to the overpayment
constituted preferences for purposes of § 547(b) of the Bankruptcy Code and
therefore may be avoided and recovered.

### COUNTS I, II and III

The first legal issue presented by the cross-motions for summary judgment is the

same for each of the first three counts of the complaint: whether Liberty Life violated the

automatic stay when it withheld debtor's monthly long-term disability payments during the

bankruptcy case and applied them to the overpayment of benefits debtor had received

prior to the petition date.

The automatic stay serves two important purposes.  It provides a debtor with a

"breathing spell" from creditors by stopping, among other things, all collections efforts,

thereby relieving the debtor of the pressures which led to bankruptcy in the first place.

In addition, the automatic stay protects the debtor's creditors by preventing any one of

them from acting unilaterally during the bankruptcy case to further their particular self-

interest to the detriment of other creditors. *Maritime Electric Co., Inc. v. United Jersey

Bank*, 959 F.2d 1194, 1204 (3d Cir 1992).

With certain exceptions which are not relevant here, the automatic stay remains in

effect until property is no longer property of the bankruptcy estate.  The stay of any other

act remains in effect until the earliest of the time the case is closed, dismissed or, in the

- 12 -

case of an individual chapter 7 debtor, a discharge is granted or denied. 11 U.S.C. § 362 (c).

The automatic stay in the present adversary action took effect on December 31, 2007, when debtor filed his bankruptcy petition.  It terminated on April 15, 2008, when debtor received a discharge and his bankruptcy case was closed.

If the above-described action of Liberty Life constituted a setoff, the action was in violation of the automatic stay. See 11 U.S.C. § 362(a)(7).  If the action amounted to a proper exercise of a right of recoupment rather than a setoff, it was not in violation of the automatic stay. *University Medical Center v. Sullivan*, 973 F.2d 1065, 1079 (3d Cir 1992).

Debtor asserts in support of his summary judgment motion with respect to the first three counts of the complaint that the action taken by Liberty Life during the bankruptcy case constituted a setoff.  Defendants assert in support of their motion summary judgment motion with respect to these same counts that the action taken by Liberty Life constituted a recoupment rather than a setoff.

Setoff and recoupment had their origins in the common law and were adopted later on in bankruptcy.  The right of setoff and is codified at § 553 of the Bankruptcy Code and is subject to the exceptions enumerated therein.  Recoupment is not codified anywhere in the Bankruptcy Code, but instead is a product of "decisional law". *Megafoods Stores, Inc. v. Flagstaff Realty Associates (In re Flagstaff Realty Associates)*, 60 F.3d 1031, 1-35 (3d Cir 1995).

- 13 -

Understanding the difference between setoff and recoupment will facilitate our analysis of the competing motions for summary judgment with respect to the first three counts of the complaint in this adversary action.

Subject to the limitations imposed by § 553(b), setoff is allowed in bankruptcy when: (1) the creditor owes a pre-petition debt to the debtor; (2) the creditor also has a pre-petition claim against the debtor; and (3) the respective obligations are mutual. *Folger Adams Security, Inc. v. DeMatteis/MacGregor, J.V.*, 209 F.3d 252, 262-63 (3d Cir 2000). Setoff occurs in situations in which the parties have independent causes of actions against one another which can be mutually deducted when one of the parties brings a lawsuit against the other. *Id.*, 209 F.3d at 259 . When setoff occurs, the creditor's claim and the debt against which it is set off typically are products of *different* transactions. *In re University Medical Center,* 973 F.2d at 1079.

It follows directly from the first two requirements that a creditor's pre-petition claim against a debtor may not be setoff in bankruptcy against a post-petition debt the creditor owes the debtor. *University Medical Center*, 973 F.2d at 1079.

Recoupment may apply where setoff pursuant to § 553 is not permitted in bankruptcy.  If applicable, recoupment allows a creditor to assert in bankruptcy that certain obligations extinguish one another. *Lee v. Schweiker*, 739 F.2d 870, 875 (3d Cir 1984).  Recoupment is in the nature of a *defense* and arises out of the transaction upon which the plaintiff's cause of action is grounded. *Bull v. United States*, 295 U.S. 247, 262, 55 S.Ct. 695, 79 L.Ed. 1421 (1935).

- 14 -

One might say in common parlance that a party exercising a right of recoupment in bankruptcy has asserted a *claim* against the debtor. Strictly speaking, however, this is not correct. F*olger Adam Security, Inc. v. DeMatteis/MacGregor,* 209 F.3d 252,   (3d Cir 2000).

For bankruptcy purposes, asserting a defense is not the same thing as asserting a "claim", as the latter term is defined at § 101(5)(A) of the Bankruptcy Code. It provides as follows:

> (5) The term "claim" means ---
> (A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, legal, equitable, secured, or unsecured.

11 U.S.C. § 101(5)(A).

Although Liberty Life is entitled under the long-term disability insurance policy to recover any overpayment debtor received in light of his receipt of SSI benefits, defendants are *not* asserting that Liberty Life has a "right to payment" from debtor. They instead are using the right of recoupment defensively (as opposed to offensively). By invoking Liberty Life's right of recoupment, defendants seek to diminish or defeat any recovery by debtor. See *Folger Adams Security*, 209 F.3d at 261. They do not seek in this adversary action to recover anything from debtor in the form of a monetary judgment.

Where setoff is involved, the mutual obligations at issue typically are the product of *different* transactions. Recoupment, by contrast, involves the setting up of a demand which arises from the identical transaction as does the debtor's cause of action. *University Medical Center*, 973 F.2d at 1079.

- 15 -

The "open-ended standard" used for determining whether a counterclaim is compulsory is not adequate for determining whether the so-called "claims" arise from the same transaction for purposes of recoupment in bankruptcy. *Id.*, 973 F.2d at 1080.  A mere logical relationship between the transactions does not establish that they arise from "the same transaction".  That the same two parties are involved and a similar subject matter gave rise to both so-called "claims" does *not* suffice for purposes of recoupment. *Id.*, 973 F.2d at 1080.

For recoupment to apply, the competing "claims" must arise out of a *single integrated transaction* so that it would be inequitable for the debtor to enjoy the benefits of that transaction without also meeting its obligations. *Id.*, 973 F.2d at 1080. Recoupment permits a transaction which is the subject of a lawsuit "to be examined in all of its aspects, and judgment to be rendered that does justice in view of the one transaction as a whole". *Rothensies v. Electric Battery Storage Company*, 329 U.S. 296, 297, 67 S.Ct. 271, 272, 91 L.Ed. 296 (1946).

The obligation of Liberty Life to pay monthly long-term disability benefits to debtor and debtor's obligation to repay any overpayment of benefits he received from Liberty Life arose out of a *single integrated transaction*.  Both obligations arose out of the disability insurance policy agreement between Columbia Energy Group and Liberty Life which went into effect on January 1, 2000.

In this adversary action, defendants maintain that Liberty Life is permitted to withhold the monthly long-term disability payments to debtor as a *defense* to debtor's

- 16 -

cause of action against it.    Defendants have not gone on the offense and countered debtor's cause of action with a cause of action of their own in which they assert that Liberty Life is entitled to a monetary award in its favor in the amount of the overpayment. They instead merely seek to reduce or extinguish the debtor's recovery by the amount of the overpayment.

Furthermore, it would be inequitable in light of debtor's previously-described protracted failure to provide Liberty Life with a copy of the award of SSI benefits he was to receive for debtor to recover in this adversary action the monthly long-term disability benefits Liberty Life withheld while the automatic stay was in effect.  Had debtor complied in a reasonable manner with the numerous requests made by Liberty Life for such information, the overpayment of long-term disability benefits most likely would not have occurred and debtor would not have brought this adversary action.  The language of the long-term disability insurance policy and the undisputed facts presented here dictate that debtor should not be permitted to recover the long-term disability payments he was supposed to receive while the automatic stay was in effect.[1]  Equity dictates that debtor should not recover the above long-term disability payments and not have to repay any overpayment.

That debtor's bankruptcy case was ongoing when Liberty withheld these monthly long-term disability payments does not affect Liberty Life's right to exercise recoupment.

---

[1]  The question arises whether allowing Liberty Life to retain the withheld monthly long-term disability payments in question and to apply them to the overpayment of such benefits violates the principle in bankruptcy that similarly situated creditors should receive similar treatment when it comes to distribution.  We will address the question later on in this memorandum opinion.

- 17 -

A trustee in bankruptcy takes property of the bankruptcy estate "subject to the rights of recoupment". *In re Flagstaff Realty Associates*, 60 F.3d at 1035. The trustee's rights in the property are subject to pre-existing equities therein. *In re Monongahela Rye Liquors*, 141 F.2d 864, 869 3d Cir 1944).

Debtor also asserts a second cause of action in each of the first three counts of the complaint  He maintains that such action as was taken after he received a discharge violated the discharge injunction found at § 524(a)(2) of the Bankruptcy Code.  This provision provides in part as follows:

> (a) A discharge in a case under this title -- ....
> (2) operates as an injunction against .. an act to collect, recover or offset any such debt as a personal liability of the debtor ....

11 U.S.C. § 524(a)(2)(A).  The phrase "any such debt" in this provision is a reference to the phrase "any discharged debt" appearing in § 524(a)(1).

As was the case with the other cause of action asserted in the first three counts of the complaint, this cause of action relies on the proposition that the action taken by Liberty Life after he received a discharge amounted to setoff, as was characterized previously.

We have determined that the action taken by Liberty Life while the automatic stay was in effect did not constitute setoff, but instead constituted recoupment. The reasoning employed in arriving at this conclusion applies with equal force to the action Liberty Took after debtor received a discharge.

The United States Court of Appeals for the Third Circuit, we have noted, has held that the right of recoupment operates only as a defense and, as such, is not a "claim"

- 18 -

within the meaning of § 101(5)(A) of the Bankruptcy Code. *Folger Adam Security*, 209 F.3d at 260.  Recoupment seeks to diminish a claim or to defeat recovery rather than to share in it. *Id.*, 209 F.3d at 260.  Recoupment amounts to a challenge to the validity or extent a debtor's cause of action.  Affirmative recovery by the party asserting the right of recoupment is not permitted. *Malinowski v. New York State Department of Labor (In re Malinowski)*, 156 F.3d 131, 133 (2d Cir. 1998).

The term debt is defined in the Bankruptcy Code as liability on a *claim*. 11 U.S.C. § 101(12).

Several things follow from this definition and the previous determination that Liberty Life does not have a claim within the meaning of § 101(5)(A).

Because Liberty Life does not have a claim here and hence has no right to payment by debtor, it follows that debtor does not have any liability to Liberty concerning the overpayment of benefits and that debtor consequently does not owe a debt to Liberty Life. See *Horn v. United States Defense Finance and Accounting Service*, 48 Fed. Appx. 481, (5th Cir. 2002); also *Snodgrass v Department of Veterans' Affairs (In re Snodgrass)*, 244 B.R.  353, 355 (Bankr. W.D. Va. 2000).

Moreover, because debtor does not owe a debt in this instance to Liberty Life, the discharge injunction set forth at § 524(a)(2) does *not* apply to the action Liberty Life took after debtor received a discharge.  A valid exercise of the right of recoupment is not subject to § 524(a)(2). *City of Fort Collins v. Gonzales (In re Gonzales)*, 298 B.R.  771, 773 (Bankr. D. Colo. 2003): also *Powell v. FELRA and UFCW Health and Welfare Fund (In re*

*Powell)*, 284 B.R.  573, 575-76 (Bankr. D. Md. 2002); *Sigmon v. Aetna Life Insurance Co. (In re Sigmon)*, (Bankr. S.D. Ohio 2001).

We conclude in light of the above considerations that the defendants in Counts I, II and III of the complaint are entitled to summary judgment while debtor is not.

## COUNT IV

Count  IV of the complaint is not substantively different from the first cause of action asserted in Counts I, II and III.  The relief requested in Count IV is the same as was requested with respect to the first cause of action asserted in Counts I, II and III.  The only clear difference is that Count IV is against all defendants jointly while Counts I, II and III are against each defendant separately.  Count IV, in other words, is redundant and must fail for the same reasons as did the first cause of action asserted in Counts I, II and III,

Debtor asserts that, without first obtaining relief from the automatic stay, defendants exercised setoff when they withheld his monthly long-term disability payments while the automatic stay was in effect and applied them to the overpayment of benefits debtor had received.  Defendants' action, debtor asserts, amounted to a wilful violation of the automatic stay.  In accordance with § 362(k)(1) of the Bankruptcy Code, debtor seeks damages for injuries he claims to have suffered as a consequence of defendants' supposedly wilful violation of the automatic stay.  He specifically seeks to recover all of the monthly long-term disability payments defendants withheld while the automatic stay was in effect.

- 20 -

We previously determined that defendants were not exercising setoff when Liberty Life withheld debtor's monthly payments during this period and applied them to the overpayment of such benefits debtor previously received. Their action instead amounted to a recoupment.

While setoff is subject to the automatic stay, recoupment is not. *In re University Medical Center*, 973 F.2d at 1079. From this it follows that defendants' actions were not in violation of the automatic stay, let alone a wilful violation, and that debtor may not recover the monthly payments Liberty Life withheld while the automatic stay was in effect.

We conclude in light of this that defendants' motion for summary judgment with respect to Count IV should be granted and that debtor's motion with respect to this count should be denied.

## COUNT V

Count V is against only Liberty Mutual Group and Liberty Life. Dawn Zahn is not a named as a defendant in this count.

Debtor asserts that the monthly long-term disability payments he was to receive during the 90-day period immediately prior to the petition date which Liberty Life withheld and then applied to the overpayment of such benefits he had previously received are avoidable preferences within the meaning of § 547(b) of the Bankruptcy Code. In addition to avoiding the alleged preferences, debtor seeks to recover them for his own benefit pursuant to § 550(a)(1).

- 21 -

As is the case with the other four counts of the complaint, the cause action debtor asserts in Count V is based on the false proposition that what Liberty Life did amounted to a setoff.  What Liberty Life did during the 90-day period prior to the petition date amounted to a recoupment, not a setoff.  Our analysis of Liberty Life's action during the bankruptcy case and after he received a discharge applies with equal force to its actions during the 90-day period preceding the bankruptcy.

Debtor's misidentification of what Liberty Life did during this period is fatal to the cause of action he asserts in Count V.

Subsection 547(b) of the Bankruptcy Code has a two-fold purpose.  First, it discourages creditors from "dismembering" the debtor during the precipitous slide into bankruptcy and gives the debtor an opportunity to "work his way out of a difficult situation" by cooperating with creditors. *Union Bank v. Wolas.*, 502 U.S. 151, 161, 112 S.Ct. 527, 533, 116 L.Ed.2d 514 (1991).  Second, and more important for present purposes, § 547(b) [as do other avoidance provisions in the Bankruptcy Code] "facilitates the prime bankruptcy policy of equality of distribution among creditors". *Id.*, 502 U.S. at 161, 112 S.Ct. at 533.

A trustee in bankruptcy takes property of the bankruptcy estate subject to the right of recoupment. *U.S. Abatement Corp. v. Mobil Exploration and Producing U.S., Inc.*, 79 F.3d 393, 398 (5th Cir. 1996).  The trustee's rights to the property are subject to pre-existing equities. *In re Monongahela Rye Liquors*, 141 F.2d at 869.

- 22 -

Recoupment, when it applies, operates as an *exception* to the scheme prescribed in bankruptcy for making distribution to creditors. *Ashland Petroleum v. Appel (In re B&L Oil Co)*. 782 F.2d 155, 159 (10th Cir. 1986).   A so-called "claim" which is subject to recoupment "avoids the usual bankruptcy channels, and is given priority over other creditors' claims". *In re Flagstaff Realty Associates*, 60 F.3d at 1035.   A creditor having a right of recoupment can recoup the full amount owed to the debtor "to the exclusion of other creditors". *In re Anes*, 195 F.2d 177, 182 3d Cir 1999).

Recoupment, in other words, does not constitute a preference for purposes of § 547 (b).   The reason for this is that recoupment serves to determine *what* the amount of a creditor's so-called "claim" really is. *Joseph v. Dillard's Inc. (In re ETM Entertainment Network, Inc.)*, 154 Fed. Appx. 4, 5 (9th Cir. 2005).   "No element of preference" is involved. *Reiter v. Cooper*, 507 U.S. 258, 265 n.2, 113 S.Ct. 12131218 n. 2, 122 L.Ed.2d 604 (1993).

We conclude in light of the foregoing considerations that debtor's motion for summary judgment with respect to Count V should be denied while defendants' motion for such relief should be granted.

An appropriate order will issue.

_____
**BERNARD MARKOVITZ**
U.S. Bankruptcy Judge

Dated:   *5-11-09*
_____

- 23 -

**FILED**

**MAY 1 1 2009**

CLERK, U.S. BANKRUPTCY COURT
WEST. DIST. OF PENNSYLVANIA

## UNITED STATES BANKRUPTCY COURT
## WESTERN DISTRICT OF PENNSYLVANIA

IN RE:

| | |
|---|---|
| **DAVID A. PUCCI,** | : **Bankruptcy No. 07-28190 BM** |
| | : |
| | : |
| **Debtor** | : **Chapter 7** |
| **DAVID A. PUCCI,** | : |
| | : |
| **Plaintiff** | : |
| | : |
| **v.** | : **Adversary No. 08-2219 BM** |
| | : |
| **LIBERTY MUTUAL GROUP, INC.,** | : |
| **LIBERTY LIFE ASSURANCE COMPANY** | : **Doc. # 20: Defendants' Motion** |
| **OF BOSTON, and DAWN ZAHN,** | : **For Summary Judgment** |
| **individually and as Recovery** | : |
| **Specialist of the Disability Claims** | : **Doc. # 24: Plaintiff's Motion For** |
| **Department of Liberty Mutual,** | : **Summary Judgment** |
| | : |
| **Defendants** | : |

### ORDER OF COURT

**AND NOW**, this ___11ᵗʰ___ day of ___May___. 2009, for reasons set forth in

the preceding memorandum opinion, it hereby is **ORDERED**, **ADJUDGED** and **DECREED**

that debtor's motion for summary judgment **SHALL** be and hereby is **DENIED** in its

entirety and that defendants' motion for summary judgment with respect to all counts of

the complaint **SHALL** be and hereby is **GRANTED**.

This adversary action **SHALL** be **CLOSED**.

It is **SO ORDERED**.

_____
**BERNARD MARKOVITZ**
U.S. Bankruptcy Judge

**FILED**

MAY 1 1 2009

CLERK, U.S. BANKRUPTCY COURT
WEST. DIST. OF PENNSYLVANIA

cm: Parties in interest